**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CAMPAIGN FOR TOBACCO-FREE KIDS, *et al.*,

*Plaintiffs*,

v.

FOOD AND DRUG ADMINISTRATION, *et al.*,

*Defendants*.

Case No. 8:26-cv-02767-ABA

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPLETE THE ADMINISTRATIVE RECORD OR, IN THE ALTERNATIVE, TAKE JUDICIAL NOTICE**

Because the parties agree that judicial notice is appropriate for all of the documents in the proposed Supplemental Administrative Record ("SAR"), their dispute over whether the Court should complete the record is mostly academic. Defendants agree that the Court can take judicial notice of all materials in the proposed Supplemental Administrative Record ("SAR") "to identify FDA's past actions and statements." Defs.' Opp. to Pls.' Mot. to Complete the Admin. Record or Take Judicial Notice ("Defs.' AR Opp."), ECF No. 82, at 5 (Nov. 6, 2026). That is the only purpose for which Plaintiffs proffer most of the documents: to show FDA's previous conclusions (e.g., that there is a "known and substantial risk of flavored ENDS with respect to youth appeal, uptake, and use," SAR 196, and "that advertising and promotion restrictions and sales access restrictions cannot mitigate this substantial risk to youth from flavored ENDS sufficiently," SAR 98-99) and the policy actions it took based on those conclusions. *See, e.g.*, Mem. of Law in Support of Pls.' Mot. for Summ. J. ("Pls.' Summ. J. Br."), ECF No. 48-1, at 23-25 (Oct. 9, 2026) (citing SAR to show arbitrary and capricious changes in FDA positions).

Accordingly, for SAR 20-220, the question of whether these documents meet the criteria for completing the record is immaterial. While Plaintiffs continue to believe that all of the documents are appropriate for inclusion within the administrative record for the reasons stated in their opening brief, the Court need not reach that question and can simply take judicial notice of those documents.

However, Plaintiffs use one of the documents not merely to show that FDA has changed its past positions, but to show that the agency "entirely failed to consider an important aspect of the problem [and] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). On March 11, 2026, less than two months before FDA issued the 2026 Guidance, it issued a Draft Guidance. SAR 3-19. The Draft Guidance provides FDA's most recent summary of its "considerable experience in regulating ENDS." SAR 6. Among other things, it compiles the current "evidence show[ing] that flavored ENDS products pose a substantial risk to youth, and they pose a greater risk to youth than tobacco-flavored ENDS." *Id.* It also summarizes evidence

that "advertising and promotion restrictions … do not directly prevent youth use" and device access restrictions "are insufficient to overcome the heightened concerns associated with [youth-appealing flavors]," before concluding that e-cigarettes with "certain flavor categories, particularly fruit and candy/dessert/other sweet flavors that appeal to youth, … bear a heightened evidentiary burden to demonstrate that marketing such products would result in a net benefit to the population as a whole." SAR 18-19.

The 2026 Guidance ignores these important aspects of the problem and is counter to this evidence, without any explanation. *See, e.g.*, Pls.' Summ. J. Br. at 24. This evidence is thus fatal to the 2026 Guidance, as nothing in the administrative record explains how Defendants can square that action with these facts and conclusions, or even considers them.

Defendants' attempt to keep the Draft Guidance out of the administrative record is entirely meritless. The same FDA sub-agency, the Center for Tobacco Products ("CTP"), issued both the Draft Guidance and the 2026 Guidance less than two months apart. They both dealt with how the agency would handle premarket tobacco applications ("PMTAs") for flavored e-cigarettes: the Draft Guidance explained the reasons that FDA rarely granted such applications and the substantive standards that supporting documentation must meet, while the 2026 Guidance freed those products from the specter of enforcement as long as their applications were not facially incomplete. The exact same evidence is critical to both of these topics. Indeed, Defendants themselves have claimed that the 2026 Guidance was intended to "focus … regulatory oversight associated with review of premarket applications," ECF No. 86-1 at 27—that is, that the 2026 Guidance was designed to affect the exact same process as the Draft Guidance. And Defendants have not suggested that different decisionmakers approved the two documents.

The Draft Guidance was thus before the "applicable deciding official at the time that official made the relevant decision," making it "directly or *indirectly* considered by agency decision-makers." *CASA, Inc. v. Noem*, No. 25-cv-1484, 2025 WL 3514378, at *8 (D. Md. Dec. 8, 2025) (emphasis in original) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), and *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)); *see also*

*AFSCME, AFL-CIO v. SSA*, No. 25-cv-596, 2026 WL 1842617, at *16 (D. Md. June 26, 2026) ("[A] complete record must include any materials that were 'referred to, considered by, or used by [the agency] before it issued its final rule.'" (quoting *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002))).

Defendants assert that Plaintiffs have not presented "'clear evidence' that FDA considered [the Draft Guidance] in issuing the Guidance." Defs.' AR Opp. at 3. It is unclear how Defendants interpret this standard, but they seem to treat it as a requirement of direct evidence that an agency decisionmaker had a document in mind when deciding to approve or take an action. This is not the actual test. An agency may not "exclude information simply because it did not rely on it for its final decision." *AFSCME*, 2026 WL 1842617, at *17 (quoting *Otsuka Pharm. Co. v. Burwell*, No. 15-cv-852, 2015 WL 1579127, at *2 (D. Md. Apr. 8, 2015)). Moreover, the case that they cite requires only that the plaintiff "(1) identif[ies] reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record, and (2) identif[ies] the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *Goose Creek Physical Med., LLC v. Becerra*, No. 22-cv-3932, 2024 WL 942918, at *5 (D.S.C. Mar. 5, 2024) (quoting *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 611 F. Supp. 3d 136, 141 (D.S.C. 2020)). A "strong, substantial or prima facie showing that the record is incomplete" in this manner is "clear evidence." *Id.*

Plaintiffs have easily met this standard. It is more than reasonable to expect that the Acting Director of CTP was aware of the guidances his office was publishing. In addition to how similar they were in subject matter and how closely in time they were issued, they were the first guidances CTP had issued in more than a year. *See* FDA, "Guidance Related to Tobacco Products," https://perma.cc/W59W-QHMX. And even if direct evidence of the decisionmaking official's knowledge were needed, Plaintiffs have it: the Director of CTP's Office of Regulation mentioned the Draft Guidance while speaking on a panel together with CTP's Acting Director. SAR 38; *see*

SAR 20, 33 (identifying speakers). At best, the agency "negligently excluded" this adverse document from the administrative record, which is enough to satisfy the standard. *CASA*, 2025 WL 3514378, at *9 (quoting *City of Dania Beach*, 628 F.3d at 590). If courts cannot draw this kind of commonsense conclusion without direct, smoking-gun evidence, it is not clear how a party could ever show that materials were "directly or *indirectly* considered by agency decision-makers." *Id.* (quoting *Thompson*, 885 F.2d at 555).

There is thus no serious dispute that the Draft Guidance was "before the agency" in the relevant sense. To rule otherwise would allow agencies to "skew the record by excluding unfavorable information … ." *AFSCME*, 2026 WL 1842617, at *17 (quoting *Otsuka Pharm. Co.*, 2015 WL 1579127, at *2). Accordingly, the Court should complete the administrative record with SAR 3-19, and take judicial notice of the other documents in the SAR.[1]

Dated: November 20, 2026

Respectfully submitted,

*/s/ Mark B. Samburg*
Mark B. Samburg (Bar No. 31090)
Jeffrey B. Dubner*
Carrie Y. Flaxman*
Elena S. Goldstein (Bar No. 31738)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
msamburg@democracyforward.org
jdubner@c.democracyforward.org
cflaxman@democracyforward.org
egoldstein@democracyforward.org

*Attorneys for Plaintiffs*

Dennis A. Henigan*
Connor Fuchs*
Andrew Tardiff (Bar No. 32504)
CAMPAIGN FOR TOBACCO-FREE KIDS
1400 I Street NW, Suite 1200
Washington, DC 20005
Tel: (202) 296-5469
dhenigan@tobaccofreekids.org
cfuchs@tobaccofreekids.org
atardiff@tobaccofreekids.org

* *Admitted pro hac vice*

[1] If the Court determines that the Draft Guidance should not be treated as part of the administrative record, it should take judicial notice of it along with the rest of the SAR, which no party opposes. In that case, it could only be considered to show the FDA's prior statements and actions (thereby proving their unexplained change in position).